John P. Aldrich
Nevada Bar No. 6877
**ALDRICH LAW FIRM, LTD.**
7866 West Sahara Avenue
Las Vegas, NV 89117
Tel:  (702) 853-5490
Fax:  (702) 227-1975
jaldrich@johnaldrichlawfirm.com

*Attorneys for Plaintiff*

*[Additional counsel appear on signature page.]*

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| SIMON ABRAHMS, individually and on behalf of all those similarly situated,<br><br>                              Plaintiffs,<br><br>            v.<br><br>RANDY S. MAY, JOHN P. CAHILL, PETER A. MEHRING, GARY M. METZGER, STEVEN K. NELSON, and ECOARK HOLDINGS, INC.,<br><br>                              Defendants. | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Simon Abrahms ("Plaintiff"), individually and on behalf of all other similarly situated stockholders of Ecoark Holdings, Inc. ("Ecoark" or the "Company"), brings this Verified Stockholder Class Action Complaint ("Complaint") against Ecoark and the members of its board of directors (the "Board"), namely: Randy S. May ("May"), John P. Cahill ("Cahill"), Peter A. Mehring ("Mehring"), Gary M. Metzger ("Metzger"), and Steven K. Nelson ("Nelson") (collectively, the "Individual Defendants" and, together with Ecoark, "Defendants"). Plaintiff's allegations are based upon his knowledge as to facts concerning himself and otherwise upon information and belief, including the investigation conducted by his attorneys and a review of public information, including news reports and documents filed with the U.S. Securities and Exchange Commission ("SEC").

///

///

- 1 -

## I.    INTRODUCTION

1.      Plaintiff brings this class action on behalf of himself and other Ecoark stockholders against the Company and its Board in connection with the tabulation of stockholders' votes on a proposed amendment to Ecoark's Articles of Incorporation (the "Articles"). According to Defendants, at the annual stockholder meeting held on February 27, 2020 (the "Annual Meeting"), stockholders approved an amendment to the Articles to increase the number of authorized shares of the Company's common stock by 100,000,000 shares to 200,000,000 (the "Articles Proposal"). In truth, however, stockholders did not approve the Articles Proposal.

2.      On February 6, 2020, Ecoark filed a Form 14A Definitive Proxy Statement (the "Initial Proxy") with the SEC, through which the Board solicited stockholder approval of the Articles Proposal. On February 10, 2020, Ecoark filed an amendment to the Initial Proxy (the "First Revised Proxy") in which the Company corrected an error in the Initial Proxy. On February 18, 2020, Ecoark filed another amendment to the Initial Proxy to fix another error (the "Second Revised Proxy", together with the Initial Proxy and First Revised Proxy, the "Proxies"). In the Second Revised Proxy, Ecoark disclosed that the Articles Proposal needed the "approval of a majority of the total voting power of Ecoark stock". In other words, because Ecoark had 69,146,161 shares of common stock outstanding, the Articles Proposal needed 34,573,081 "For" votes to be approved.

3.      In the Second Revised Proxy, Ecoark also affirmatively represented that brokers, banks, trustees, or other nominees ("Brokers") were not allowed to vote shares that they held on behalf of beneficial stockholders in connection with the Articles Proposal unless those stockholders directed their Brokers how to vote.  As represented by the Company, the votes of such uninstructed shares would be tallied as "Broker Non-Votes" (defined below), which would have the same effect as votes "Against" the Articles Proposal. Nonetheless, when it came time to count votes, the Company ignored what it told its stockholders and allowed Brokers to vote uninstructed shares "For" the Articles Proposal.

4.      On March 4, 2020, the Company filed a Form 8-K with the SEC (the "March 4 Form 8-K") in which it claimed that the Articles Proposal "was approved", having purportedly

1   received approximately 42.5 million "For" votes. The purported results were false, as Defendants

2   only achieved them by miscounting the votes, treating approximately 19 million "Broker Non-

3   Votes" as "For" votes.

4          5.     Had Defendants correctly tabulated the Articles Proposal vote – namely, counted

5   the votes in the manner they told stockholders they would in the Proxy and treated uninstructed

6   shares as Broker Non-Votes, which would have had the effect of votes "Against", the Articles

7   Proposal would have failed. Properly counted, the Articles Proposal received only 23,326,697

8   "For" votes – far short of the required 34,573,081 "For" votes.

9          6.     Through this complaint, Plaintiff brings claims for breach of fiduciary duty and

10   declaratory relief to void any amendment to the Company's Articles or other consequence of the

11   Company's treatment of the Articles Proposal as validly adopted. Plaintiff further seeks other relief

12   as may prove necessary to remedy the harm resulting from Defendants' wrongful tabulation of the

13   vote on the Articles Proposal and attendant actions.

14   **II.   PARTIES**

15         **A.   Plaintiff**

16         7.     Plaintiff Simon Abrahms is, and has continuously been, an Ecoark stockholder at

17   all relevant times. Plaintiff is a citizen of Missouri and no defendant is a citizen of Missouri.

18         **B.   Defendants**

19         8.     Defendant Ecoark is a Nevada corporation which purportedly maintains its

20   principal executive offices at 5899 Preston Road #505, Frisco, Texas 75034. Ecoark is a citizen of

21   Nevada and Texas.

22         9.     Defendant Randy S. May is the Chairman of the Board. May has served as an

23   Ecoark director since 2016 and previously served as a director of Ecoark, Inc. from 2011 until it

24   effected a reverse acquisition of Ecoark on March 24, 2016. May is a citizen of Arkansas.

25         10.    Defendant John P. Cahill has served as an Ecoark director since 2016. Cahill is a

26   citizen of New York.

27         11.    Defendant Peter A. Mehring has served as an Ecoark director since 2017. Mehring

28   is a citizen of California.

12.     Defendant Gary M. Metzger has served as an Ecoark director since 2016 and previously served as a director of Ecoark, Inc. from 2013 until it effected a reverse acquisition of Ecoark on March 24, 2016. Metzger is a citizen of Florida.

13.     Defendant Steven K. Nelson has served as an Ecoark director since 2017. Nelson is a citizen of Arkansas.

## III.    JURISDICTION AND VENUE

14.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332.  Plaintiff is a resident of Missouri.  Defendant Ecoark is incorporated in the state of Nevada and has its principal places of business in Texas. Defendants May, Cahill, Mehring, Metzger, and Nelson are citizens of Arkansas, New York, California, Florida, and Arkansas, respectively.

15.     The amount in controversy in this action exceeds $5,000,000, exclusive of interests and costs.

16.     This Court has personal jurisdiction over Defendants because they each do business in and have significant contacts with this District.  Ecoark is incorporated in Nevada and each of the Individual Defendants is a member of Ecoark's Board.

17.     This Court also has personal jurisdiction over Defendants pursuant to Federal Rule of Civil Procedure 4(k)(1)(A) because they would be subject to jurisdiction of a court of general jurisdiction in this District.

18.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because a substantial part of Plaintiff's claims occurred in this District and because each Defendant transacts business in, is found in, and/or has agents in this District.

## IV.    FACTUAL ALLEGATIONS

### A.    Ecoark Issues the Proxies.

19.     On February 6, 2020, Ecoark filed its Initial Proxy with the SEC. Therein, the Board solicited approval of the Articles Proposal – *i.e.*, "a proposal to amend the Company's Articles of Incorporation to increase the number of authorized shares of the Company's common stock from 100,000,000 shares to 200,000,000". (Initial Proxy at 1). The Company also solicited stockholder approval of four other proposals: (1) the reelection of directors ("Director Election"); (2) approval

of the compensation of the named-executive officers ("Say-on-Pay Vote"); (3) vote on the frequency of future votes to approve the compensation of named-executive officers ("Say-on-Pay Frequency Vote"); and (4) ratification of the Company's auditor ("Auditor Ratification").

20. On February 10, 2020, the Company filed the First Revised Proxy in which it corrected an error in the Initial Proxy.

21. On February 18, 2020, the Company filed the Second Revised Proxy, in which it fixed yet more errors in the Initial Proxy. In the Second Revised Proxy, Defendants confirmed that the Articles Proposal "requires at least a majority of the voting power of the stockholders" to be approved. (Second Revised Proxy at 6 (emphasis added)). As of the Annual Meeting's record date, January 10, 2020, the Company had 69,146,161 shares of common stock outstanding, and thus, the Articles Proposal needed 34,573,081 "For" votes to carry.

22. In contrast with the Articles Proposal, none of the other proposals put forth at the Annual Meeting required at least a majority of the voting power of the stockholders" to be approved.

23. As disclosed in the Second Revised Proxy, Defendants stated:

**What vote is required to approve each Proposal?**

With respect to the election of directors (Proposal No. 1), our bylaws require that each director be elected by a plurality of the votes present at the meeting, either virtually or by proxy. In other words, the five nominees receiving the greatest number of votes will be elected. You may vote for or abstain from voting for any or all of the director nominees nominated for election at the Annual Meeting and named in this Proxy Statement.

Approval of the compensation of our named executive officers (Proposal No. 2), the frequency of future advisory votes on named executive officer compensation (Proposal No. 3) and ratification of the appointment of RBSM, LLP as our independent registered public accounting firm for the fiscal year ending March 31, 2020 (Proposal No. 4) require the affirmative vote of a majority of votes cast, and ***approval of the Amendment of the articles of incorporation to increase the number of authorized shares of common stock (Proposal No. 5) requires at least a majority of the voting power of the stockholders.*** You may vote for, against or abstain from voting for these proposals. Proposals No. 2 and No. 3, however, are merely advisory and are not binding on the Company, the Board, or the Compensation Committee of the Board. Despite the fact that Proposals No. 2 and No. 3 are not binding, the Board and the Compensation Committee will take the voting results of the proposals under advisement when making future decisions regarding the Company's executive compensation program and the frequency of future advisory votes on named executive officer compensation.

(*Id.* (emphasis added)).

24.     In the Proxies, Defendants also disclosed whether Brokers could vote uninstructed shares and the effect that a "Broker Non-Vote" would have with respect to each proposal at the Annual Meeting.

25.     A "Broker Non-Vote" occurs in connection with shares held by a Broker "in street name" for a beneficial holder – *i.e.*, the stockholder's stock is held beneficially by a Broker.  To vote shares held for them by a Broker, a beneficial stockholder instructs her Broker how to the vote. Such instructions may include voting for the proposal, voting against the proposal, or abstaining from the vote. When a stockholder does not give voting instructions, his or her Broker has authority to vote the stockholder's shares pursuant to the Broker's discretion on "routine" proposals but not on "non-routine" proposals. With respect to non-routine proposals, Brokers record a "Broker Non-Vote" if the stockholder has not provided voting instructions.

26.     In the Proxies, Defendants disclosed that the Articles Proposal, Director Election, Say-on-Pay Vote, and Say-on-Pay Frequency Vote were all non-routine proposals and the Auditor Ratification was a routine proposal. Specifically, Defendants stated:

**Which ballot measures are considered "routine'' or "non-routine''?**

The ratification of the appointment of RBSM, LLP as our independent registered public accounting firm for the fiscal year ending March 31, 2020 (Proposal No. 4) is considered a "routine" matter. Your broker, therefore, may vote your shares in its discretion if you do not provide instructions on how to vote on this routine matter, and no broker "non-votes" are expected in connection with this proposal.

The election of directors (Proposal No. 1), the approval of the compensation of our named executive officers (Proposal No. 2), the frequency of future advisory votes on named executive officer compensation (Proposal No. 3), ***Amendment of the articles of incorporation to increase the number of authorized shares of common stock (Proposal No. 5) are considered "non-routine" matters. Accordingly, a broker may not vote on these proposals without instructions from its customer and broker "non-votes" may occur with respect to these proposals.***

(*Id.* at 5 (emphasis added)).

27.     "Broker Non-Votes" are not considered votes cast. As such, "Broker Non-Votes" will typically have no effect on a stockholder vote unless the vote requires the affirmative approval by a set percentage of all outstanding shares, such as the affirmative approval by a majority of the voting power of the stockholders. Where the voting standard requires the affirmative approval by

a majority of the voting power of the stockholders, "Broker Non-Votes" and "Abstention," have the same effect as "Against" votes.

28.    Because the Articles Proposal required the affirmative approval by a majority of the voting power of the stockholders, "Broker Non-Votes" and "Abstentions" had the same effect as "Against" votes. None of the other proposals put forth at the Annual Meeting required the affirmative approval by a majority of the voting power of the stockholders, and, as such, "Broker Non-Votes" and "Abstentions" had no impact on those votes.

29.    As the Company confirmed in the Proxies:

**Will abstentions and broker "non-votes" have an impact on the proposals contained in this Proxy Statement?**

Broker non-votes and abstentions are included in the calculation of the number of votes considered to be present for purposes of determining the presence of a quorum but are not counted as shares present and entitled to be voted with respect to a matter on which the nominee has expressly not voted. ***Broker non-votes*** do not count as a vote "FOR" or "AGAINST" Proposals 1, 2, 3 or 4, but ***have the same effect as a vote "AGAINST" Proposal 5.***

(*Id.* at 6 (emphasis added)).

30.    In the Proxies, the Company further stated that "Abstentions and broker non-votes will have the effect of a vote 'Against' [the Articles] [P]roposal." (*Id.* at 1, 26).

31.    Accordingly, Defendants' public statements could not have been clearer: "Broker Non-Votes" and "Abstentions" "will have the effect of a vote 'Against'" the Articles Proposal.

**B.    The Board Holds the Annual Meeting and Miscounts the Results of Stockholders' Vote on the Articles Proposal.**

32.    The Company held its Annual Meeting on February 27, 2020.

33.    Six days later, Ecoark filed a Form 8-K with the SEC in which it announced the purported results of stockholder votes on the proposal put forward at the 2020 Annual Meeting.

34.    A summary of the reported results is below:

| Proposal | Votes Cast | | | |
|---|---|---|---|---|
| | *For* | *Withheld* | *Broker Non-Votes* | *Total* |
| Randy S. May Reelection | 23,891,922 | 3,666,497 | 19,253,665 | 46,812,084 |
| John P. Cahill Reelection | 23,205,793 | 4,352,626 | 19,253,665 | 46,812,084 |

| Proposal | Votes Cast | | | |
|---|---|---|---|---|
| | *For* | *Withheld* | *Broker Non-Votes* | *Total* |
| Peter A. Mehring Reelection | 20,808,400 | 6,750,019 | 19,253,665 | 46,812,084 |
| Gary M. Metzger Reelection | 23,153,003 | 4,405,416 | 19,253,665 | 46,812,084 |
| Steven K. Nelson Reelection | 23,183,443 | 4,374,976 | 19,253,665 | 46,812,084 |

| Proposal | Votes Cast | | | | |
|---|---|---|---|---|---|
| | *For* | *Against* | *Abstentions* | *Broker Non-Votes* | *Total* |
| Articles Proposal | 42,580,362 | 4,007,433 | 244,289 | 0 | 46,832,084 |
| Say-on-Pay Vote | 25,041,006 | 2,245,686 | 271,727 | 19,253,665 | 46,812,084 |
| Auditor Ratification | 45,578,270 | 578,915 | 654,899 | 0 | 46,812,084 |

| Proposal | Votes Cast | | | | |
|---|---|---|---|---|---|
| | *1 Year* | *2 Years* | *3 Years* | *Abstentions* | *Total* |
| Say-on-Pay Frequency Vote | 4,404,205 | 387,067 | 19,412,091 | 3,355,056 | 27,558,419 |

35.     As demonstrated above, the number of votes purportedly cast in favor of the Articles Proposal and the complete lack of any "Broker Non-Votes" stand in stark contrast with the votes cast with respect to the other non-routine proposals at the Annual Meeting. Although there were purportedly no "Broker Non-Votes" for the Articles Proposal, there were exactly 19,253,665 "Broker Non-Votes" cast for the other non-routine proposals.[1]

36.     These reported results are simply not possible had the Company tallied votes as it represented to stockholders it would.  It is inconceivable that the beneficial owners of exactly 19,253,665 shares of common stock instructed their Brokers to vote their shares "For" the Articles Proposal while simultaneously failing to provide similar instructions – or, indeed, providing any instruction at all – with respect to the other Non-Routine Proposals.

37.     Had the vote concerning the Articles Proposal been tabulated as represented in the

---

[1] The Company did not report the number of "Broker Non-Votes" with respect to the Frequency of Executive Compensation Vote. Presumably, that vote also had 27,558,419 Broker Non-Votes, which would have resulted in a total of 46,812,084 shares.

Proxy, the Proposal would not have been approved.  Tabulated correctly, the Articles Proposal vote was roundly rejected:

| Proposal | Votes | | | | |
|---|---|---|---|---|---|
| | *For* | *Against* | *Abstentions* | *Broker Non-Votes* | *Total* |
| Articles Proposal | 23,326,697 | 4,007,433 | 244,289 | 19,253,665 | 46,832,084 |

38.     As demonstrated, the Articles Proposal only received approximately 23.3 million "For" votes – far short of the required 34,573,081 "For" votes. Indeed, properly counted the "Against" votes outweighed the "For" votes, with 23,326,697 "For" votes and 23,505,387 "Against" votes.

39.     Accordingly, Defendants improperly tabulated the votes with respect to the Articles Proposal and wrongfully represented that stockholders approved the matter. As demonstrated, Ecoark's stockholders did not approve the Articles Proposal.

40.     On April 7, 2020, the Company filed a Form 8-K with the SEC. In that Form 8-K, the Company announced that, on March 31, 2020, the Company filed with the Nevada Secretary of State a Certificate of Amendment to the Company's Articles to increase the authorized shares of common stock from 100,000,000 to 200,000,000 shares of common stock. The Company further stated that "[t]he increase was approved by the Company's shareholders at its annual meeting on February 27, 2020."

41.     The Company has recently begun to make use of the invalid shares. As of October 12, 2020, Ecoark had 106,255,723 shares outstanding, meaning that the Company has issued at least 6,255,723 shares that the stockholders did not authorize it to issue. The Company has likely issued even more invalid stock since then.

**C.     In the Alternative, the Proxies were False and Misleading.**

42.     To the extent that Defendants argue that they did not miscount the stockholder vote with respect to the Articles Proposal because the vote was a routine matter, then the Individual Defendants breached their fiduciary duties by filing a false and misleading proxy in which they falsely represented that the Articles Proposal was a non-routine matter.

43.     In the Proxies, Defendants misrepresented to stockholders how their shares would

1  be counted with respect to the Articles Proposal.

2  44.    Stockholders have a right to cast fully informed votes based on truthful proxy

3  solicitations from their fiduciaries.  How shares are to be treated and the effect that they will have

4  are the most fundamental pieces of information that a reasonable Ecoark stockholder would

5  consider in determining whether and/or how to vote on the Articles Proposal. In this vein, whether

6  the Articles Proposal was a routine or non-routine matter was material to a reasonable stockholder,

7  as it directly impacted how stockholders' shares would be treated and the effect that they would

8  have.

9  45.    As represented in the Proxies, the Articles Proposal was a non-routine proposal and

10  Brokers had no authority to use their discretion to decide how to vote – in other words, they had

11  to record "Broker Non-Votes." Defendants also represented that "Broker Non-Votes" would have

12  the same effect as a vote "Against" the Articles Proposal.

13  46.    As such, after reviewing the Proxies, stockholders were left with the impression

14  that they did not need to do anything to vote against the Articles Proposal because their Brokers

15  would record a "Broker Non-Vote" on their behalf as to each uninstructed share, which would

16  have the same effect as an "Against" vote.

17  47.    Notwithstanding these ultimately false statements in the Proxies, Brokers were

18  afforded discretionary authority with respect to the Articles Proposal and used such discretion to

19  cast "For" votes. Indeed, as demonstrated above, whether the Articles Proposal was a routine or

20  non-routine matter was outcome determinative and it was only because Brokers had discretionary

21  authority that the Articles Proposal purportedly was approved.

22  48.    Had the Company's stockholders been told the truth about whether Brokers had

23  discretionary authority with respect to the Articles Proposal, they may not have allowed their

24  shares to be voted in favor of the Proposal.

25  49.    Accordingly, the Proxies were materially false and misleading.

26  **V.    CLASS ALLEGATIONS**

27  50.    Plaintiff, a stockholder in the Company, brings this action as a class action pursuant

28  to Rule 23 of the Federal Rules of Civil Procedure, on behalf of all similarly situated Ecoark

stockholders (the "Class"). Excluded from the Class are the Defendants named herein and any person, firm, trust, corporation, or other entity related to or affiliated with any Defendant.

51.     This action is properly maintainable as a class action.

52.     The Class is so numerous that joinder of all members is impracticable. As of January 10, 2020, there were 69,146,161 outstanding shares of Ecoark common stock.

53.     There are questions of law and fact which are common to the Class, including, *inter alia*:

        a.     Whether the Individual Defendants breached their fiduciary duties to Ecoark stockholders;

        b.     Whether Defendants mistreated uninstructed shares with respect to the Articles Proposal; and

        c.     Whether Plaintiff and the other members of the Class are entitled to declaratory relief.

54.     Plaintiff is committed to prosecuting this action, is an adequate representative of the Class, and has retained competent counsel experienced in litigation of this nature.

55.     Plaintiff's claims are typical of those of the other members of the Class. Plaintiff was an owner of Ecoark stock as of the record date for the Annual Meeting and at all other times relevant to the wrongdoing complained of herein.

56.     Plaintiff has no interests that are adverse to the Class.

57.     Defendants' actions have affected Plaintiff and all other Class members alike, such that injunctive and/or corresponding declaratory relief with respect to the entire Class is appropriate.

58.     The prosecution of separate actions by individual members of the Class would create the risk of inconsistent or varying adjudications for individual members of the Class, which may as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede other members' ability to protect their interests. Litigation of separate actions would also create the risk of establishing incompatible standards of conduct for the party opposing the Class.

59.     Plaintiff anticipates that there will be no difficulty in the management of this litigation.   A class action is superior to other available methods for the fair and efficient adjudication of this controversy, and common questions of law and fact predominate over individual inquiries.

**VI.   CLAIMS FOR RELIEF**

**FIRST CAUSE OF ACTION**
**Breach of Fiduciary Duty**
*(Direct Claim against the Individual Defendants)*

60.     Plaintiff incorporates by reference and realleges each allegation set forth above.

61.     The Individual Defendants owe fiduciary duties to Ecoark stockholders, including the duties of care, disclosure, good faith, and loyalty.

62.     By virtue of their positions as directors and/or officers of Ecoark and/or their exercise of control and ownership over the business and corporate affairs of the Company, the Individual Defendants have, and at all relevant times had, the power to control and influence and did control and influence and cause the Company to engage in the practices complained of herein. Each Individual Defendant was required to cause the Company to accurately count stockholders' votes and issue accurate disclosures to Ecoark stockholders.

63.     The Individual Defendants failed to fulfill their fiduciary duties by ignoring the outcome of the vote and acting as if Ecoark's stockholders had voted to approve the Articles Proposal when, in fact, they did not.

64.     As a result of these actions of the Individual Defendants, Plaintiff and the members of the Class have been and will be injured.

65.     Plaintiff has no adequate remedy at law.

**SECOND CAUSE OF ACTION**
**Declaratory Relief**
*(Direct Claim against All Defendants)*

66.     Plaintiff incorporates by reference and realleges each allegation set forth above.

67.     The facts and circumstances pleaded herein have given rise to an actual controversy which currently exists between Plaintiff and the Class, on one hand, and Defendants, on the other hand, concerning their respective rights and duties under Nevada law.

68.     By improperly tallying the results of Class members' vote on the Articles Proposal, Defendants have held out that the Articles Proposal was approved when no such approval was ever secured.

69.     Plaintiff desires a judicial determination and declaration that the Articles Proposal and ensuing amendment of the Articles are void because the Articles Proposal was not approved by Ecoark stockholders.

70.     A judicial declaration is necessary and appropriate at this time under the circumstances in order that Ecoark stockholders' voting rights may be protected and no (further) common stock shares be issued under the invalid Articles Proposal.

71.     Plaintiff has no adequate remedy at law.

### THIRD CAUSE OF ACTION
**Breach of Fiduciary Duty**
*(Direct Claim against the Individual Defendants)*
*(In the Alternative)*

72.     Plaintiff incorporates by reference and realleges each allegation set forth above.

73.     Plaintiff pleads Count III in the alternative and to the extent that Defendants contend that they did not incorrectly tabulate the stockholder vote with respect to the Articles Proposal because the vote was a routine matter.

74.     The Individual Defendants owe fiduciary duties to Ecoark stockholders, including the duties of care, disclosure, good faith, and loyalty.

75.     The Individual Defendants have an obligation to disclose all material information with respect to a stockholder vote.

76.     The Individual Defendants issued, caused to be issued, and participated in the issuance of materially false and misleading written statements to stockholders which were contained in the Proxies.  The Proxies misrepresented and failed to accurately disclose whether Brokers would have discretion to vote uninstructed shares on the Articles Proposal.  In the Proxies, the Individual Defendants falsely represented that Broker had no discretionary authority and would record "Broker Non-Votes" with respect to the Articles Proposal.  In truth, however, Brokers were afforded discretionary authority and voted uninstructed shares as votes "For" the Articles Proposal.

77.     Whether Brokers had discretionary authority with respect to the Articles Proposal was material to Ecoark stockholders' decision whether and/or how to vote on the Articles Proposal.

78.     Because the Individual Defendants falsely represented that Brokers did not have discretionary authority to vote uninstructed shares, the Individual Defendants breached their fiduciary duties.

79.     As a result of these actions of the Individual Defendants, Plaintiff and the members of the Class have been and will be injured.

80.     Plaintiff has no adequate remedy at law.

## VII.    PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of the Class, pray for relief as follows:

A.     Certifying this action as a Class action pursuant to Rule 23 of the Federal Rules of Civil Procedure and appointing Plaintiff and his counsel to represent the Class;

B.     Declaring that the Articles Proposal was not approved by stockholders and is therefore void;

C.     Finding the Individual Defendants liable for breaching their fiduciary duties;

D.     Awarding compensatory and punitive damages against all Defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

E.     Awarding Plaintiff the costs and disbursements of this action, including attorneys, accountants, and experts' fees; and

F.     Awarding such other and further relief as is just and equitable.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

## VIII.   JURY TRIAL DEMANDED

Plaintiff demands a jury trial of all issues so triable.

DATED:  November 9, 2020

/s/ John P. Aldrich
John P. Aldrich
Nevada Bar No. 6877
**ALDRICH LAW FIRM, LTD.**
7866 West Sahara Avenue
Las Vegas, NV 89117
Tel:   (702) 853-5490
Fax:  (702) 227-1975
jaldrich@johnaldrichlawfirm.com

William J. Fields *(pro hac to be submitted)*
**FIELDS KUPKA & SHUKUROV LLP**
1370 Broadway, 5th Floor – #5100
New York, NY 10018
Tel:    (212) 231-1500
Fax:    (646) 851-0076
wfields@fksfirm.com

*Attorneys for Plaintiff*